601 S.E.2d 85

Jaclyn BURLESS and Brinley Price, Individually and as Parents and Natural Guardians of Alexis Price, a Minor, Plaintiffs Below, Appellants,

v.

WEST VIRGINIA UNIVERSITY HOSPITALS, INC., a West Virginia Corporation; and University of West Virginia Board of Trustees, a West Virginia Corporation, Defendants Below, Appellees.

and

Melony J. Pritt, Individually and as a Parent and Natural Guardian of Adam Pruitt, a Minor, Plaintiff Below, Appellant,

v.

West Virginia University Hospitals, Inc., a West Virginia Corporation; and University of West Virginia Board of Trustees, a West Virginia Corporation, Defendants Below, Appellees.

Nos. 31423, 31424.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 2004.

Decided June 30, 2004.

Maynard, C.J., filed opinion concurring in part and dissenting in part.

768

Alex J. Shook, Hamstead, Hamstead & Williams, Morgantown, Harry S. Cohen, Douglas L. Price, Harry S. Cohen & Associates, Pittsburgh, PA, for the Appellants.

Charles J. Crooks, David Z. Myerberg, Jackson Kelly, P.L.L.C., Morgantown, for the Appellees.

DAVIS, Justice:

In these two appeals from two orders of the Circuit Court of Monongalia County granting summary judgment to West Virginia University Hospitals (hereinafter referred to as "WVUH"), the Appellants ask this Court to rule that the circuit courts erred in finding that no actual or apparent agency relationship existed between physicians employed by the West Virginia University Board of Trustees (hereinafter referred to as "the BOT") and WVUH. We find no error in the circuit courts' rulings that no actual agency existed. However, we find that the courts erred in granting summary judgment on the issue of apparent agency. In reaching this conclusion, we find that for a hospital to be held liable for a physician's negligence under an apparent agency theory, a plaintiff must establish that: (1) the hospital either committed an act that would cause a reasonable person to believe that the physician in question was an agent of the hospital, or, by failing to take an action, created a circumstance that would allow a reasonable person to hold such a belief, and (2) the plaintiff relied on the apparent agency relationship.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Each of the two cases consolidated for purposes of this opinion involve a woman who gave birth to her child at WVUH under circumstances that she alleges resulted in severe birth defects to her child. The relevant facts of each case, as developed in the pleadings, depositions, affidavits, and exhibits, follow.

### A. Jaclyn Burless

In July of 1998 Jaclyn Burless learned she was pregnant and sought prenatal care at the Cornerstone Care Clinic (hereinafter referred to as "the Cornerstone Clinic" or simply "the clinic") located in Greensboro, Pennsylvania. The Cornerstone Clinic was where Ms. Burless had routinely sought her primary medical care. Similarly, Ms. Burless elected to receive her prenatal care at the clinic. She received her prenatal care from Dr. Douglas Glover for approximately seven months.[1]

In November, 1998, Dr. Glover sent Ms. Burless to WVUH for an ultrasound. At

---

1. In addition to providing obstetrical care services at the clinic, Dr. Glover also was a member of the faculty of the West Virginia University School of Medicine.

that time, Ms. Burless signed a WVUH consent form that stated: "I understand that the faculty physicians and resident physicians who provide treatment in the hospital are not employees of the hospital." Thereafter, in February of 1999 when she was at approximately 37 weeks of gestation, Ms. Burless experienced an elevated blood pressure and edema. On February 15, 1999, Dr. Glover advised Ms. Burless to report to the WVU Emergency Department for an evaluation. On February 17, 1999, Ms. Burless presented herself at the WVUH Emergency Department as instructed and, after an evaluation, was instructed to return to the High Risk Clinic, which is located on the WVUH premises, in two days with a urine sample for testing. Ms. Burless was also advised that she would receive the remainder of her prenatal care at the High Risk Clinic. She followed the instructions to return to the High Risk Clinic in two days. She was then instructed to return in one week for further evaluation. When she returned, on February 26, 1999, she was induced into labor at 7:50 p.m. Her labor was permitted to continue throughout the remainder of February 26 and until 4:00 p.m. on February 27. She alleges that during this time, doctors, residents, and nurses at WVUH noted variable decelerations in the fetal heart rate of her unborn daughter, Alexis Price. At 4:00 p.m. on February 27 the decision was made to deliver the baby via cesarean section, and such delivery was accomplished at 4:16 p.m. The child was born with an APGAR [2] score of two at one minute and six at five minutes. Soon after birth the child began to experience seizures and suffered a stroke. Ms. Burless has alleged that the doctors and hospital were negligent, *inter alia*, in failing to monitor her labor and delivery, which negligence caused severe and permanent mental, neurological, and psychological injuries to the infant, Alexis Price.

Ms. Burless later filed a negligence action, claiming breaches of the standard of care in connection with the management of her labor, against the BOT as the physicians' employer,[3] and claiming vicarious liability on the part of WVUH based upon a theory of apparent agency between WVUH and the physicians who provided the allegedly negligent care.[4] WVUH moved for summary judgment asserting, in relevant part, that there was no apparent agency relationship between it and the doctors and residents who provided care to Ms. Burless. Finding no just cause for delay, pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure, the circuit court granted summary judgment to WVUH by final order entered December 11, 2002. The circuit court found that there was nothing in the record demonstrating the creation of an apparent agency relationship between the physicians who treated Ms. Burless and WVUH. Ms. Burless appealed the order and this Court granted her petition for appeal. For purposes of rendering our decision, we consolidated her case with a similar appeal filed by Ms. Melony Pritt.

### A. Melony Pritt

Melony Pritt presented to the Emergency Department of WVUH on June 2, 1998, complaining of pain in her right lower abdomen. It was determined that she was nine weeks pregnant and had a left ovarian cyst. Ms. Pritt was released from the hospital on June 3 and was instructed to follow-up at the Obstetrics and Gynecology clinic at the Physicians Office Center (hereinafter "POC") for her prenatal care and monitoring of her ovarian cyst. When Ms. Pritt arrived for her first follow-up visit, she reported to the admissions clerk at WVUH and was assigned to

---

**2.** An APGAR Score is a newborn's first evaluation and serves as a predictive indicator of any potential problems. The infant is examined at one and five minutes after birth and ranked on a scale of zero to two on five characteristics: 1) skin color; 2) heart rate; 3) response to stimuli of inserting a catheter in the nose; 4) muscle tone; and 5) respiratory effort. Thus, the maximum score is 10 with most healthy newborns scoring an eight or nine. The five APGAR factors can be mnemonically summarized as *A*-ppearance, *P*-ulse, *G*-rimace, *A*-ctivity, *R*-espira-

tion. *Hines v. Secretary of the Dep't of Health and Hum. Serv.*, 940 F.2d 1518, 1521 n. 1 (Fed. Cir.1991).

**3.** Ms. Burless' action against the BOT has been stayed pending this appeal.

**4.** Ms. Burless asserted other theories of apparent agency that we find are without merit and, therefore, do not consider in this opinion.

Dr. Aparna Kamat, a second-year resident who was supervised in treating Ms. Pritt by Drs. Brita Boyd, Millard Simmons, and Leo Brancazio. Subsequent ultrasounds revealed the continued presence of the cyst. On September 4, Ms. Pritt saw Dr. Kamat at the POC and a left ovarian cystectomy using a laproscopic procedure was scheduled. On that same date, and during her visit with Dr. Kamat at the POC, Ms. Pritt signed an informed consent for the laparotomy and left ovarian cystectomy. This consent, and three other consent forms signed by Ms. Pritt during the course of her medical care, all contained the following statement: "I understand that the faculty physicians and resident physicians who provide treatment in the hospital are not employees of the hospital." The surgery was performed by Drs. Kamat and Boyd on September 8, 1998, when Ms. Pritt was estimated to be at about twenty-three-and-one-half weeks gestation. During the surgical procedure, the cyst broke open and yellow fluid leaked into the pelvic cavity. No irrigation was performed and no antibiotics were prescribed. Ms. Pritt was discharged from the hospital on September 10, 1998. On September 12, 1998, she presented to the Emergency Department at WVUH with severe abdominal pain. She was found to have a massive abdominal infection, which infection caused premature labor. Her son, Adam Pruitt, was born on September 13, 1998. Ms. Pritt contends that, due to his prematurity at birth, Adam has suffered severe permanent mental, neurological, and psychological injuries.

Ms. Pritt subsequently sued the BOT [5] and WVUH claiming that injuries to herself and her son resulted from the negligence of the physicians in recommending and performing an elective laproscopic cystectomy procedure when she in only her twenty-third week of gestation. WVUH moved for summary judgment asserting the lack of any apparent agency relationship between it and the doctors and residents who provided care to Ms. Pritt.[6] Finding no just cause for delay, pursuant to Rule 54(b), the circuit court granted

summary judgment to WVUH by final order entered July 31, 2002. The circuit court found, *inter alia*, that Ms. Pritt's theory of apparent agency must fail because WVUH had not, through its actions or its conduct, held the physicians out to be its employees. Ms. Pritt appealed the order and this Court granted her petition for appeal. We consolidated her case with that of Ms. Burless for purposes of rendering our decision.

## II.

### STANDARD OF REVIEW

■ These cases are before this Court on appeal from orders granting summary judgment in favor of WVUH. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Thus, in undertaking our *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter.* Moreover,

> Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter.* We are also mindful that "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is

---

**5.** WVUH states, and Ms. Pritt does not dispute, that Ms. Pritt's case against the BOT remains pending in the circuit court.

**6.** Ms. Pritt asserted other theories of apparent agency that we find are without merit and, therefore, do not consider in this opinion.

to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*. With due consideration for these principles, we address the issues raised on appeal.

## III.

## DISCUSSION

Ms. Burless and Ms. Pritt assert that the circuit courts erred both in finding no actual agency relationship between the doctors who treated them and WVUH, and in finding no apparent agency relationship. We address each of these assignments of error in turn.

### A Actual Agency

■■■ Ms. Burless and Ms. Pritt argue that the circuit court erred in concluding that there was no actual agency relationship between the physicians who provided them treatment and WVUH. We have explained that "one must examine the facts of a particular case to determine whether an agency relationship exists." *Arnold v. United Cos. Lending Corp.*, 204 W.Va. 229, 239, 511 S.E.2d 854, 864 (1998). The "seminal case establishing the test for whether an independent contractor relationship exists is *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990)." *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 340, 524 S.E.2d 688, 695 (1999). Syllabus point 5 of *Paxton* holds:

> There are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of *respondeat superior*: (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

184 W.Va. 237, 400 S.E.2d 245. Furthermore,

> "[t]o ascertain whether a workman is an employee or an independent contractor each case must be resolved on its own facts and ordinarily no one feature of the relationship is controlling, but all must be considered together.' Syl. pt. 1, *Myers v. Workmen's Compensation Commissioner*, 150 W.Va. 563, 148 S.E.2d 664 (1966)."

Syl. pt. 2, *Barkley v. State Workmen's Comp. Comm'r*, 164 W.Va. 777, 266 S.E.2d 456 (1980).

Ms. Burless, Ms. Pritt, and WVUH have directed us to numerous portions of the voluminous record in this case in support of their contrasting contentions on this issue. We have thoroughly considered each of the *Paxton* factors in light of the particular facts of this case and the evidence in the record to which we were directed. We conclude that the considerable evidence contained in the record admits of only one reasonable conclusion, the BOT resident physicians who treat patients at WVUH are not agents or employees of WVUH.

■■■ We find additional support for our conclusion in the statutes that separated the BOT from WVUH.

> " 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syllabus point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syllabus point 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997).

Syl. pt. 4, *Daily Gazette Co. v. West Virginia Development Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999). The Legislature has plainly declared that the two entities, WVUH and the BOT, become separate: "[i]t is fiscally desirable that the state separate the business and service functions of the hospital from the educational functions of the health science schools ...." W. Va.Code § 18–11C–2 (1996) (Repl. Vol. 2003). More specifically to the issue at hand, the Legislature has stated

> [t]he corporation [WVUH] may utilize both corporation employees and university personnel. On or after the transfer date, each university employee working in the hospital shall elect to be either a corporation employee or a part of university personnel [an employee of the BOT]. No university employee may be required to become an employee of the corporation as the condition of employment or promotion. All university personnel are university employees in all respects.

W. Va.Code § 18–11C–4(d) (1984) (Repl. Vol. 2003). Thus, it is plain that the Legislature's intent was that the BOT and WVUH operate as two separate entities, with distinct employees. Accordingly, we find no error in the circuit courts decisions to grant summary judgment to WVUH on the issue of actual agency.

## B. Apparent Agency

■ Ms. Burless and Ms. Pritt next assert that the circuit courts erred in finding no apparent agency[7] relationship between the doctors who treated them and WVUH. Because we have explained in the previous section that we find no *actual* agency relationship in these cases, we have concluded that the doctors were, in fact, independent contractors. Our cases have recognized that, as a general rule, "[i]f [a physician] is found to be an independent contractor, then the hospital is not liable for his [or her] negligence." *Thomas v. Raleigh Gen. Hosp.*, 178 W.Va. 138, 141, 358 S.E.2d 222, 225 (1987). *See also* Syl. pt. 7, *Cross v. Trapp*, 170 W.Va. 459, 294 S.E.2d 446 (1982) ("When a patient asserts that a particular method of medical treatment, such as surgery, was performed by the patient's privately retained physician without the patient's consent, the hospital where that treatment was performed will ordinarily not be held liable to the patient upon the consent issue, where the physician involved was not an agent or employee of the hospital during the period in question.").

■ As with most general rules, there are exceptions to the independent contractor rule. We have previously recognized that

> One who by his acts or conduct has permitted another to act apparently or ostensibly as his agent, to the injury of a third person who has dealt with the apparent or ostensible agent in good faith and in

the exercise of reasonable prudence, is estopped to deny the agency relationship. Syl. pt. 1, *General Elec. Credit Corp. v. Fields*, 148 W.Va. 176, 133 S.E.2d 780 (1963). *See also* Syl. pt. 8, *Brewer v. Appalachian Constructors, Inc.*, 138 W.Va. 437, 76 S.E.2d 916 (1953) ("Agency by representation or estoppel, sometimes designated as 'apparent agency', involves a case in which there may be no agency in fact, but where the principal or employer holds out or represents a person to be his agent or employee, and a third party or parties rely thereon, in which case the person making the representation is estopped to deny the agency."). In the instant cases, however, we are asked to determine the existence of an apparent agency relationship in the hospital/physician context. As explained in more detail below, modern hospitals and their relationships with the physicians who treat patients within their facilities are rather unique and complex. Thus, instead of relying on a general rule for apparent agency such as those quoted above, we believe a more particular rule is in order.

■ In the hospital/physician context, this Court has heretofore established that even where a physician charged with negligence is an independent contractor, the hospital may nevertheless be found vicariously liable where the complained of treatment was provided in an emergency room. *See* Syl. pt. 1, *Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991) ("Where a hospital makes emergency room treatment available to serve the public as an integral part of its facilities, the hospital is estopped to deny that the physicians and other medical personnel on duty providing treatment are its agents. Regardless of any contractual arrangements with so-called independent contractors, the hospital is liable to the injured patient for acts of malpractice committed *in its emergency room*, so long as the requisite proximate cause and damages are present.")

---

7. Ms. Burless and Ms. Pritt refer to this element of their claim as "ostensible agency" instead of "apparent agency." The two terms are commonly used interchangeably. *See Baptist Mem'l Hosp. Syst. v. Sampson*, 969 S.W.2d 945, 947 n. 2 (Tex.1998) (collecting cases) (commenting that "[m]any courts use the terms ostensible agency, apparent agency, apparent authority, and agency by estoppel interchangeably. As a practical mat-

ter, there is no distinction among them."). *See generally Blacks Law Dictionary* 62 (7th ed. 1999) (noting in definition of "agency by estoppel" that it is "[a]lso termed *apparent agency; ostensible agency, agency by operation of law.*"). For ease of reference, we will refer to the doctrine as "apparent agency," unless quoting an authority using an alternate term.

(emphasis added). Although we have addressed using a theory of apparent agency to overcome the physician/independent contractor rule in the context of emergency room treatment, we have never expressly defined such a rule for use outside of the emergency room setting. We do so now.

**1. Hospital/Physician Apparent Agency Outside the Emergency Room Setting.** The public's confidence in the modern hospital's portrayal of itself as a full service provider of health care appears to be at the foundation of the national trend toward adopting a rule of apparent agency to find hospitals liable, under the appropriate circumstances, for the negligence of physicians providing services within its walls. As one court observed:

> In an often cited passage, a New York court explained: "The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes, as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary,

by legal action. Certainly, *the person who avails himself of 'hospital facilities' expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility.*"
> ... In light of this modern reality, the overwhelming majority of jurisdictions employed ostensible or apparent agency to impose liability on hospitals for the negligence of independent contractor physicians.

*Mejia v. Community Hosp. of San Bernardino*, 99 Cal.App.4th 1448, 1453, 122 Cal. Rptr.2d 233, 236 (2002) (emphasis added) (quoting *Bing v. Thunig*, 2 N.Y.2d 656, 666, 163 N.Y.S.2d 3, 11, 143 N.E.2d 3, 8 (1957)).[8] In fact, this Court has itself observed that

> "Modern hospitals have spent billions of dollars on marketing to nurture the image that they are full-care modern health facilities. Billboards, television commercials and newspaper advertisements tell the public to look to its local hospital for every manner of care, from the critical surgery and life-support required by a major accident to the minor tissue repairs resulting from a friendly game of softball. These efforts have helped bring the hospitals vastly increased revenue, a new role in daily health care and, ironically, a heightened exposure to lawsuits[.]"

*Glover v. St. Mary's Hosp.*, 209 W.Va. 695, 699, 551 S.E.2d 31, 35 (2001) (per curiam)

---

**8.** *See also Williams v. St. Claire Med. Ctr.*, 657 S.W.2d 590, 596 (Ky.Ct.App.1983) ("We believe it to be axiomatic that the general public, unless otherwise directed, in seeking medical services from public hospitals, acts in total reliance upon the hospital staff as though they are agents and servants of the hospital in a traditional sense. We believe this view is one prevailing in contemporary judicial thought."); *Parker v. Freilich*, 803 A.2d 738, 747 (Pa.Super.Ct.2002) (" '[T]he changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care' ... and that 'a patient today frequently enters the hospital seeking a wide range of hospital services rather than personal treatment by a particular physician.' " (quoting *Capan v. Divine Providence Hosp.*, 287 Pa.Super. 364, 368–69, 430 A.2d 647, 649 (1981))); *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis.2d 188, 206–07, 423 N.W.2d 848, 855 (1988) (" 'The concept that a hospital does not undertake to treat patients, does not undertake to act through its doctors and

nurses, but only procures them to act solely upon their own responsibility, no longer reflects the fact. The complex manner of operation of the modern-day medical institution clearly demonstrates that they furnish far more than mere facilities for treatment.... Certainly, the person who avails himself of our modern "hospital facilities" ... expects that the hospital staff will do all it reasonably can to cure him and does not anticipate that its nurses, doctors and other employees will be acting solely on their own responsibility.' " (citation omitted)); *Sharsmith v. Hill*, 764 P.2d 667, 672 (Wyo.1988) ("[The ostensible or apparent agent] theory of liability, which has gained widespread acceptance, stems from judicial recognition that hospitals are 'corporate entities capable of acting only through human beings whose services the hospital engages' and that hospitals derive financial profit by holding 'themselves out to the public as offering and rendering quality health care services.' " (quoting *Hardy v. Brantley*, 471 So.2d 358, 371 (Miss. 1985))).

(quoting Steven R. Owens, *Pamperin v. Trinity Memorial Hospital and the Evolution of Hospital Liability: Wisconsin Adopts Apparent Agency*, 1990 Wis. L. Rev. 1129, 1129 (1990)).

In order to set out a specific test for finding liability based upon apparent agency in a hospital/physician context, we consider the tests that have been adopted in other jurisdictions.[9] The California appellate court in *Mejia*, summarized the tests that are used as follows:

> Although the cases discussing ostensible agency use various linguistic formulation to describe the elements of the doctrine, in essence, they require the same two elements: (1) conduct by the hospital that would cause a reasonable person to believe that the physician was an agent of the hospital, and (2) reliance on that apparent agency relationship by the plaintiff.

99 Cal.App.4th at 1453, 122 Cal.Rptr.2d at 236.[10] Looking at some of the specific tests that have been adopted, we note that the Appellate Court of Illinois has said

> [f]or a hospital to be held liable under an apparent agency theory, a plaintiff must establish that: " '(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the in-

dividual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' "

*Scardina v. Alexian Brothers Med. Ctr.*, 308 Ill.App.3d 359, 363–64, 241 Ill.Dec. 747, 719 N.E.2d 1150, 1153–54 (1999) (quoting *Gilbert v. Sycamore Mun. Hosp.*, 156 Ill.2d 511, 525, 190 Ill.Dec. 758, 622 N.E.2d 788, 795 (1993)) (additional citation omitted).[11] This concept has been stated in a slightly different way by the Supreme court of South Carolina, which has stated that in order to establish hospital liability for an independent contractor physician

> a plaintiff must show that (1) the hospital held itself out to the public by offering to provide services; (2) the plaintiff looked to the hospital, rather than the individual physician, for care; and (3) a person in similar circumstances reasonably would have believed that the physician who treated him or her was a hospital employee.

*Osborne v. Adams*, 346 S.C. 4, 8, 550 S.E.2d 319, 321 (2001). *See also Cuker v. Hillsbor-*

9. *See Edlis, Inc. v. Miller*, 132 W.Va. 147, 167, 51 S.E.2d 132, 141–42 (1948) ("The cases referred to from other jurisdictions ... are, of course, not of controlling force or effect or binding in authority upon this Court. They are, however, entitled to great respect and should be regarded as persuasive authority.").

10. In recognizing an apparent agency theory, many courts have relied upon the *Restatement (Second) of Agency* § 267, the *Restatement (Second) of Torts* § 429, or both. *See generally Mejia v. Community Hosp. of San Bernardino*, 99 Cal. App.4th 1448, 1453 n. 2, 122 Cal.Rptr.2d 233, 236 n. 2 (2002) ("Many courts based ostensible agency on Restatement Second of Agency, section 267, or Restatement Second of Torts, section 429.... Most courts distinguished the two sections ..., but others equated them ...." (citations omitted)). *See e.g., Vanaman v. Milford Mem'l Hosp. Inc.*, 272 A.2d 718, 722 (Del.1970) (referring to *Restatement (Second) of Agency* § 267); *Sword v. NKC Hosps. Inc.*, 714 N.E.2d 142, 147 (Ind.1999) ("[W]e adopt the theory of apparent and ostensible agency formulated in the Restatement (Second) of Torts section 429 (1965)."); *Jacobs v. Flynn*, 131 Md.App. 342, 383, 749 A.2d 174, 196 (2000) (observing that

"[t]he Court of Appeals has endorsed the Restatement (Second) of Agency, § 267 (1958) in determining whether an apparent agency relationship exists."); *Parker v. Freilich*, 803 A.2d 738, 747 (Pa.Super.Ct.2002) ("Based on the exception embodied in section 429 of the Restatement (Second) of Torts, and Restatement (Second) of Agency, Section 267, Pennsylvania courts formulated the doctrine of ostensible agency in situations where a plaintiff seeks to hold a hospital or HMO liable for the negligence of independent contractors engaged by the hospital or HMO."); *Osborne v. Adams*, 346 S.C. 4, 7–8, 550 S.E.2d 319, 321 (2001) (relying on *Restatement (Second) of Torts* § 429); *Baptist Mem'l Hosp. Syst. v. Sampson*, 969 S.W.2d 945, 948 (Tex.1998) (relying on *Restatement (Second) of Agency* § 267).

11. The *Scardina* court went on to explain that "[l]iability under apparent agency, however, will not attach against a hospital where the patient knows, or reasonably should have known, that the treating physician was an independent contractor." 308 Ill.App.3d at 364, 241 Ill.Dec. 747, 719 N.E.2d at 1154 (citation omitted).

*ough County Hosp. Auth.*, 605 So.2d 998, 999 (Fla.Dist.Ct.App.1992) ("The theory of apparent agency is applicable where a hospital holds out a physician as its agent and/or employee, and a patient accepts treatment from that physician in the reasonable belief that it is being rendered on behalf of the hospital." (citation omitted)); *Zdrojewski v. Murphy*, 254 Mich.App. 50, 66, 657 N.W.2d 721, 731 (2003) ("In order to prove that [a physician] was the ostensible agent of [a hospital], plaintiff must show that (1) she dealt with [the physician] with a reasonable belief in the physician's authority as an agent of [the hospital], (2) her belief was generated by some act or neglect on the part of the hospital, and (3) she was not guilty of negligence." (citation omitted)); *Collins v. Gettysburg Hosp.*, 55 Pa. D.&C. 4th 174, 184 (Comm.Pl. Adams Cnty.2001) ("Two factors relevant to a finding of ostensible agency in a particular case are (1) whether the patient looks to the institution rather than the individual physician for care, and (2) whether the hospital 'holds out' the physician as its employee"); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 684 (Tex.Ct.App.2000) ("To establish a hospital's liability for an independent contractor's medical malpractice based on ostensible agency, a plaintiff must show (i) he or she had a reasonable belief the physician was the agent or employee of the hospital, (ii) such belief was generated by the hospital affirmatively holding out the physician as its agent or employee or knowingly permitting the physician to hold herself out as the hospital's agent or employee, and (iii) he or she justifiably relied on the representation of authority." (citations omitted)); *Kashishian v. Al-Bitar*, 194 Wis.2d 722, 729, 535 N.W.2d 105, 108–09 (Ct.App.1995) (explaining that for a hospital to be liable under the doctrine of apparent authority, a plaintiff must show: "1) the hospital, or the individual alleged to be negligent, acted in a manner which would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; 2) where the acts of the individual alleged to be negligent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and 3) the plaintiff acted in reliance upon the conduct of the hospital or the individual alleged to be negligent, consistent with ordinary care and prudence." (citations omitted)); *Sharsmith v. Hill*, 764 P.2d 667, 672 (Wyo.1988) (noting that "[t]he [ostensible or apparent agency] rule has been stated in the following terms: 'Where a hospital holds itself out to the public as providing a given service, ... and where the hospital enters into a contractual arrangement with one or more physicians to direct and provide the service, and where the patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment, the doctrine of respondeat superior applies and the hospital is vicariously liable for damages proximately resulting from the neglect, if any, of such physicians.' " (quoting *Hardy v. Brantley*, 471 So.2d 358, 371 (Miss.1985)).[12]

█ Using the foregoing authority as guidance, we now hold that for a hospital to be held liable for a physician's negligence under an apparent agency theory, a plaintiff must establish that: (1) the hospital either committed an act that would cause a reasonable person to believe that the physician in

12. *See, e.g., Vanaman v. Milford Mem'l Hosp. Inc.*, 272 A.2d 718, 722 (Del.1970) ("[I]f it should be found that the Hospital represented that Dr. Graybeal was its servant or other agent in diagnosing and treating plaintiff ..., and if it thereby caused her to justifiably rely upon the care or skill of Dr. Graybeal, then it is liable to her for harm caused by any lack of care or skill by Dr. Graybeal just as if he were the Hospital's servant or agent."); *Williams v. St. Claire Med. Ctr.*, 657 S.W.2d 590, 596 (Ky.App.1983) ("[T]he appellant justifiably believed Johnson to be a hospital employee. By taking no action to give appellant notice otherwise, the hospital 'held-out' Johnson as an employee, thus creating an apparent agency."); *Jacobs v. Flynn*, 131 Md.App. 342, 382, 749 A.2d 174, 196 (2000) (approving a jury instruction stating, in relevant part, "[t]here is apparent authority under the law only if [Howard County General Hospital (HCGH)] by its words or actions cause [sic] Mr. Jacobs to believe that Dr. Flynn was an employee of [HCGH], and that this belief by Mr. Jacobs was objectively reasonable under all the circumstances and that Mr. Jacobs relied upon the existence of that relationship when deciding to submit to treatment by Dr. Flynn.").

question was an agent of the hospital, or, by failing to take an action, created a circumstance that would allow a reasonable person to hold such a belief, and (2) the plaintiff relied on the apparent agency relationship.[13]

■■■■■ 2. **Hospital's Actions or Inactions.** The first element of our test requires evidence that the hospital either committed an act that would cause a reasonable person to believe that the physician in question was an agent of the hospital, or, by failing to take an action, created a circumstance that would allow a reasonable person to hold such a belief. This portion of the test focuses on the acts of the hospital and is generally satisfied when "the hospital 'holds itself out' to the public as a provider of care." *Mejia,* 99 Cal.App.4th at 1453, 122 Cal.Rptr.2d at 237 (citations omitted). *See also Collins v. Gettysburg Hosp.,* 55 Pa. D.&C. 4th at 184 (explaining that whether a hospital "holds out" a physician as its employee typically refers to a hospital acting or omitting to act "in some way which leads the patient to a reasonable belief he is being treated by the hospital or one of its employees." (citation omitted)). However, "the hospital need not make express representations to the patient that the treating physician is an employee of the hospital; rather a representation also may be general and implied." *Sword v. NKC Hosps. Inc.,* 714 N.E.2d 142, 151 (Ind.1999) (citations omitted). *See also Kashishian,* 194 Wis.2d at 728, 535 N.W.2d at 108 ("There ... need not be an 'express representation' that the person alleged to be negligent is an employee for the doctrine of apparent authority to apply." (citation omitted)). One court has explained that "[i]n order to prove this element, it is not necessary to show an

express representation by the hospital.... Instead, a hospital is generally deemed to have held itself out as the provider of care, unless it gave the patient contrary notice." *Mejia,* 99 Cal.App.4th at 1454, 122 Cal.Rptr.2d at 237 (citations omitted). The "contrary notice" referred to by the *Mejia* court generally manifests itself in the form of a disclaimer. As one court has acknowledged, "[a] hospital generally will be able to avoid liability by providing *meaningful written notice* to the patient, acknowledged at the time of admission." *Sword v. NKC Hosps., Inc.,* 714 N.E.2d 142, 152 (emphasis added) (citations omitted). It has been said that "[l]iability under apparent agency... will not attach against a hospital where the patient knows, or reasonably should have known, that the treating physician was an independent contractor." *Scardina,* 308 Ill.App.3d at 364, 241 Ill.Dec. 747, 719 N.E.2d at 1154 (citation omitted). Thus, a hospital's failure to provide a meaningful written notice may constitute "failing to take an action" and thereby allowing a reasonable person to believe that a particular doctor is an agent of the hospital. Conversely, absent other overt acts by the hospital indicating an employer/employee relationship, an unambiguous disclaimer by a hospital explaining the independent contractor status of physicians will generally suffice to immunize the hospital from being vicariously liable for physician conduct.[14]

■■■ Turning to the cases before us, the circuit courts in both cases relied on the disclaimers signed by Ms. Pritt & Ms. Burless in granting summary judgment in favor of WVUH. In addition, the circuit court considering Ms. Pritt's case summarily concluded that WVUH had not "held the physicians

---

13. Through recent amendments to the Medical Professional Liability Act, the Legislature has attempted to limit the application of the apparent agency doctrine in the hospital/physician context to situations where a physician does not have medical malpractice coverage of at least one million dollars. *See* W. Va.Code § 55–7B–9(g) (2003) (Supp.2003) ("A health care provider may not be held vicariously liable for the acts of a nonemployee pursuant to a theory of ostensible agency unless the alleged agent does not maintain professional liability insurance covering the medical injury which is the subject of the action in the aggregate amount of at least one million dollars."). This statute was enacted after the two

causes of action at issue in this case accrued. Therefore, the statute has no application to our resolution of the instant claims.

14. Of course, "we do not hold that the existence of an [unambiguous] independent contractor disclaimer ... is always dispositive on the issue[.]" *James by James v. Ingalls Mem'l Hosp.,* 299 Ill. App.3d 627, 233 Ill.Dec. 564, 701 N.E.2d 207, 210–11 (1998). A plaintiff may still be able to prove that, under the totality of the circumstances, an unambiguous disclaimer was insufficient to inform him or her of the employment status of a hospital's physicians.

out to be its employees." We disagree with these conclusions.

The disclaimer that WVUH required both Ms. Pritt and Ms. Burless to sign stated: "I understand that the faculty physicians and resident physicians who provide treatment in the hospital are not employees of the hospital." WVUH contends that this "disclaimer" was sufficient to unequivocally inform Ms. Pritt and Ms. Burless that the physicians treating them were not employees of the hospital. We disagree.[15]

We do not find the disclaimer language used by WVUH, which indicated that "faculty physicians and resident physicians who provide treatment in the hospital" are independent contractors, was sufficient to support a grant of summary judgment in their favor. The WVUH disclaimer provision presupposes that all patients can distinguish between "faculty physicians," "resident physicians" and any other type of physician having privileges at the hospital. In other words, for this disclaimer to be meaningful, a patient would literally have to inquire into the employment status of everyone treating him or her. Obviously, "[i]t would be absurd to require ... a patient ... to inquire of each person who treated him whether he is an employee of the hospital or an independent contractor." *Capan v. Divine Providence Hosp.*, 287 Pa.Super. 364, 430 A.2d 647, 649 (1981) (citations omitted). *See also Butler v. Domin*, 302 Mont. 452, 15 P.3d 1189, 1197 (2000) ("[A]bsent any *meaningful notice* to the contrary, it is reasonable for a patient to believe that a physician is a hospital employee[.]") (emphasis added) (citations omitted).

Consequently, it was improper for the circuit court to grant summary judgment in favor of WVUH. Ms. Burless and Ms. Pritt have established a genuine question of material fact as to whether WVUH has either committed an act that would cause a reasonable person to believe that the physician in question was an agent of the hospital, or, by failing to take an action, created a circumstance that would allow a reasonable person to hold such a belief.

▪▪▪ 3. *Reliance*. The reliance prong of the apparent agency test is a subjective molehill. "Reliance ... is established when the plaintiff 'looks to' the hospital for services, rather than to an individual physician." *Mejia*, 99 Cal.App.4th at 1453, 122 Cal. Rptr.2d at 237 (citations omitted). It is "sometimes characterized as an inquiry as to whether 'the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.'" *Sword*, 714 N.E.2d at 151. This factor "simply focuses on the 'patient's belief that the hospital or its employees were rendering health care.'" *Jennison v. Providence St. Vincent Med. Ctr.*, 174 Or.App. 219, 230, 25 P.3d 358, 364 (2001) (quoting *Sword v. NKC Hosps., Inc.*, 714 N.E.2d at 152) (additional citation omitted). However, this portion of the test also requires consideration of the "reasonableness of the patient's [subjective] belief that the hospital or its employees were rendering health care." *Sword v. NKC Hosps. Inc.*, 714 N.E.2d at 152. "This ... determination is made by considering the totality of the circumstances, including ... any special knowledge the patient[/plaintiff] may have about the hospital's arrangements with its physicians." *Id.*

▪▪▪ Mrs. Pritt and Ms. Burless provided evidence indicating that they believed that the physicians treating them were employees of WVUH.

In the deposition testimony of Ms. Burless she stated her belief that the people treating her at the hospital were employees, as follows: "Q. Did anyone do anything to make you believe that they were employees of WVU Hospital? A. They were all wearing their coats and name tags and in the building, so, you know, you know they're—they work there, they're employees." In the affidavit submitted by Ms. Pritt in opposition to WVUH's motion for summary judgment, the following was stated:

---

15. The disclaimer is unlike the one we recently approved of in *Hicks v. Ghaphery*:

    The undersigned recognizes *all doctors of medicine* furnishing services to the patient, including radiologists, pathologists, anesthesiolo-

gists, radiation oncologists, and the like are independent contractors and are not employees or agents of the hospital.
212 W.Va. 327, 341, 571 S.E.2d 317, 331 (2002) (emphasis added).

2. At the West Virginia University Hospitals, I was assigned doctors who treated me and consulted me through my prenatal care, surgery and delivery of my son Adam.

3. Throughout all of my treatment and consultations, I believed that the doctors and nurses who treated me and spoke to me were employees of the West Virginia University Hospitals.

Ms. Burless and Ms. Pritt have also established a genuine question of material fact on the issue of their reliance on the apparent agency relationship between WVUH and their treating physicians. Consequently, on the issue of apparent agency, it is clear that summary judgment should not have been granted in favor of WVUH.

## IV.

## CONCLUSION

For the reasons explained above, we find that the circuit courts correctly granted summary judgment on this issue of actual agency, however they erred in granting summary judgment to WVUH on the issue of apparent agency. Accordingly, the orders of the circuit courts are affirmed in part, reversed in part, and this case is remanded for further proceedings consistent with this opinion.

Affirmed in Part, Reversed in Part and Remanded.

Chief Justice MAYNARD concurs, in part; and dissents, in part; and files a separate opinion.

MAYNARD, Chief Justice, concurring, in part, and dissenting, in part:

I agree with the majority opinion that the circuit court properly granted summary judgment on the issue of actual agency. I disagree, however, with the majority opinion's finding that the circuit court erred in granting summary judgment on the issue of apparent agency.

I believe the record clearly shows that there was no apparent agency. First, Ms. Burless and Ms. Pritt signed an unambiguous disclaimer that stated: "I understand that the faculty physicians and resident physicians who provide treatment in the hospital are not employees of the hospital." The majority opinion, in discounting this disclaimer, reasons that "[t]he WVUH disclaimer provision presupposes that all patients can distinguish between 'faculty physicians,' 'resident physicians' and any other type of physician having privileges at the hospital." This reasoning baffles me. If *both* faculty physicians *and* resident physicians are non-employees, why is it necessary to distinguish between them? Second, the evidence demonstrates that neither Ms. Burless nor Ms. Pritt relied on any representation by the hospital that their physicians' status was that of agent. Finally, the evidence shows that Ms. Burless chose her own physician, and Ms. Pritt could have rejected the hospital's choice and chosen another physician. For these reasons, I would have affirmed the circuit court's grant of summary judgment on behalf of the hospital on the issue of apparent agency.

Accordingly, I concur to the majority opinion insofar as it affirms the circuit court's ruling that no actual agency exists. I dissent to the opinion insofar as it reverses the circuit court's ruling on the issue of apparent agency.