958 A.2d 101 (2008)
403 N.J. Super. 306
ESTATE OF Ramona CORDERO, by Gabina CORDERO, Administratrix ad prosequendum, and Nicolas Cordero, individually, Plaintiffs-Appellants,
v.
CHRIST HOSPITAL, Defendant-Respondent, and
Selvia G. Zaklama, M.D., Patrick McGovern, M.D. and Hudson Anesthesia Group, Defendants.
No. A-1289-07T1
Superior Court of New Jersey, Appellate Division.
Argued September 9, 2008.
Decided October 29, 2008.
*103 Brian E. Mahoney, Chatham, argued the cause for appellants (Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte, attorneys; Michael B. Zerres, of counsel; Mr. Mahoney, on the brief).
Nan Gallagher, Springfield, argued the cause for respondent (Hardin, Kundla, McKeon & Poletto, attorneys; Patrick J. Clare, of counsel; Ms. Gallagher, on the brief).
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
Plaintiffs, the estate and husband of Ramona Cordero, appeal from an order granting summary judgment in favor of defendant Christ Hospital on claims of fraudulent concealment of evidence and vicarious liability for the negligence of defendant Dr. Selvia G. Zaklama. Dr. Zaklama, an anesthesiologist and a member of defendant Hudson Anesthesia Group, practices in Christ Hospital pursuant to the hospital's contract with Hudson. Dr. Zaklama attended to Ramona Cordero (Cordero) during surgery performed at Christ Hospital. Plaintiffs' claims against Dr. Zaklama and Hudson were settled, and their claim against defendant Dr. Patrick McGovern, a surgeon, was dismissed.
Plaintiffs contend the evidence was adequate to permit a jury to find Christ Hospital liable for Dr. Zaklama's negligence under a theory of "apparent authority," which applies when a "hospital, by its actions, has held out a particular physician as its agent and/or employee and ... a patient has accepted treatment from that physician in the reasonable belief that it is being rendered in behalf of the hospital." Basil v. Wolf, 193 N.J. 38, 67, 935 A.2d 1154 (2007) (quoting and approving Arthur v. St. Peters Hosp., 169 N.J.Super. 575, 581, 405 A.2d 443 (Law Div.1979)). Based on the absence of evidence that Christ Hospital "actively held out" Dr. Zaklama as its agent or "misled Cordero into believing" Dr. Zaklama was its agent, or that Cordero was misled, the trial court dismissed plaintiffs' claim.
We hold that when a hospital provides a doctor for a patient and the totality of the circumstances created by the hospital's action and inaction would lead a patient to reasonably believe the doctor's care is rendered in behalf of the hospital, the hospital has held out that doctor as its agent. We also hold that when a hospital patient accepts a doctor's care under such circumstances, the patient's acceptance in the reasonable belief the doctor is rendering treatment in behalf of the hospital may be presumed unless rebutted.

*104 I
The facts viewed in the light most favorable to plaintiffs are as follows. On the morning of September 14, 2003, Cordero, a fifty-one-year-old insulin-dependent diabetic, woke up vomiting. When her condition did not improve, she sought care in Christ Hospital's emergency room. She was diagnosed with renal failure, admitted to Christ Hospital and underwent dialysis while there. Surgery to implant a catheter that would facilitate ongoing dialysis was done on September 22.
Dr. Zaklama, who is on the staff of Christ Hospital's anesthesiology department through Hudson's contract with Christ Hospital, was on call on September 22. Dr. Zaklama was assigned, randomly, to provide services during Cordero's procedure. Dr. Zaklama did not meet Cordero or any member of her family before September 22.
Dr. Zaklama had one brief conversation with Cordero before the procedure. The doctor gave this account: "I just introduced myself, `I am Dr. so and so who is the anesthesia [sic] and I'm going to take care of you.'" Dr. Zaklama wore no identification to disclose her affiliation with Hudson and did not tell Cordero that Christ Hospital assumed no responsibility for the care she would provide. Christ Hospital's website identifies Dr. Zaklama as a member of its anesthesia department without reference to Hudson.
During Cordero's operation, the surgeon implanted the catheter without incident, but while the surgeon was dictating his report in the operating room he noticed that Cordero's blood pressure and heart rate had dropped. He alerted Dr. Zaklama, who was still with Cordero. Dr. Zaklama was unable to stabilize the patient, and Christ Hospital's "Code" team was summoned. Although Cordero was resuscitated, she suffered brain damage and never regained consciousness. She remained in a vegetative state until she died approximately three-and-one-half years later.

II
Generally, a principal is immune from liability for the negligence of "an independent contractor, or that of its employees, in the performance of the contracted services." Basil, supra, 193 N.J. at 62, 935 A.2d 1154; Restatement (Second) of Torts § 409 (1965). There are exceptions to that general rule. See id. at comment b (noting that the exceptions are generally "stated... as particular detailed rules for particular situations").
The exception at issue here is based on what our courts have termed "apparent authority."[1] "[A]pparent authority imposes liability on the principal `not as the result of the reality of a contractual relationship but rather because of the actions of a principal or an employer in somehow misleading the public into believing that the relationship or the authority exists.'" Basil, supra, 193 N.J. at 67, 935 A.2d 1154 (quoting Arthur, supra, 169 N.J.Super. at 580, 405 A.2d 443 and noting that the passage quoted "best explain[s]" apparent authority).
Imputation of liability based on apparent authority prevents a principal from "choos[ing] to act through agents whom it has clothed with the trappings of authority and then determin[ing] at a later time whether the consequences of their acts *105 offer an advantage." Restatement (Third) of Agency, § 2.03 comment c (2006). On that ground, a principal is vicariously liable for its agent's tortious conduct "when actions taken by [an] agent with apparent authority constitute the tort...." Id. at § 7.08; see id. at comment b (discussing the rationale for tort liability based on apparent authority). When a hospital's conduct permits a patient to "properly assume" a doctor is rendering treatment in behalf of the hospital, principles of apparent authority prohibit the hospital from avoiding liability by relying on "secret limitations... in a private contract between the hospital and the doctor." Mduba v. Benedictine Hosp., 52 A.D.2d 450, 384 N.Y.S.2d 527, 529 (1976).
With few exceptions, courts considering the issue have concluded that liability for a doctor's negligence should be imputed to a hospital when apparent authority, as defined in that jurisdiction, is established. See Sword v. NKC Hosps., Inc., 714 N.E.2d 142, 145, 150-53 (Ind.1999) (recognizing, discussing and following the trend in cases decided by other jurisdictions); Burless v. W. Va. Univ. Hosp., Inc., 215 W.Va. 765, 601 S.E.2d 85 (2004) (same); Kashishian v. Port, 167 Wis.2d 24, 481 N.W.2d 277 (1992) (same); but see Austin v. Litvak, 682 P.2d 41, 54 (Colo.1984) (concluding that the doctor, who has "sole and final control" should have sole responsibility); Tolman v. IHC Hosps., Inc., 637 F.Supp. 682, 684 (D.Utah 1986) (following Austin).
Under decisions of our courts, apparent authority is demonstrated when the "`hospital, by its actions, has held out a particular physician as its agent and/or employee and ... a patient has accepted treatment from that physician in the reasonable belief that it is being rendered in behalf of the hospital.'" Basil, supra, 193 N.J. at 67, 935 A.2d 1154 (quoting and approving Arthur, supra, 169 N.J.Super. at 581, 405 A.2d 443).[2] In this case, the trial court erred in concluding that Christ Hospital was entitled to summary judgment because there was no evidence that the hospital actively held out Dr. Zaklama or misled Cordero and no proof that Cordero was misled.
The trial court read the conditions for liability stated in Arthur too strictly. The facts of Arthur demonstrate that a hospital can act to "hold out" a doctor as its agent without actively misrepresenting the doctor's agency or affirmatively misleading the patient. In that case, a patient sought treatment in the hospital's emergency room for an injured wrist, was sent to the radiology department for an x-ray and was erroneously advised that there was no fracture. Arthur, supra, 169 N.J.Super. at 577-78, 405 A.2d 443. The only evidence of action by the hospital "holding out" the doctors to the patient was that the hospital provided doctors to treat an emergency. Id. at 577-78, 583, 405 A.2d 443.
The Arthur court assessed whether the hospital's conduct amounted to holding out the doctors by considering the totality of the circumstances created by the hospital's action  establishing and staffing an emergency room  and its inaction  failing to give the patient notice of the doctor's independence or an opportunity to select a different doctor. Viewing the resulting *106 "factual setting" from the perspective of a reasonable patient in the same situation, who would not be aware of the doctors' status, the court concluded that the evidence was sufficient to support an inference that the hospital held out the doctors in a manner that would lead a reasonable patient to assume that the doctors were rendering care in its behalf. Id. at 582-83, 405 A.2d 443.
The Arthur court's consideration of the hospital's entire course of conduct and the impression it would convey to a reasonable patient in the same situation is consistent with section 2.03 of the Restatement (Third) of Agency and with section 429 of the Restatement (Second) of Torts, upon which the court relied in Arthur, supra, 169 N.J.Super. at 581, 405 A.2d 443. Under section 2.03, apparent authority exists "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency, supra, § 2.03. Under section 429, liability for negligent care is imputed to a principal who "employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants." Restatement (Second) of Torts, supra, § 429. Although section 429 does not expressly require manifestations by the principal, section 429 applies only if the principal has acted to manifest assent "by employing an independent contractor to perform services" for another and allowing the independent contractor to perform under circumstances that lead the person who accepts the service to reasonably believe it is rendered in behalf of the principal. See id. at reporter's note (citing Jenkins v. Charleston Gen. Hosp. & Training Sch., 90 W.Va. 230, 110 S.E. 560, 562 (1922), a case in which a "radiologist was employed and paid by the defendant [hospital] to perform work, in discharge of [the hospital's] own contract and undertaking to diagnose and treat the injury").
The standards for apparent authority employed in Arthur and stated in sections 2.03 and 429 have two essential elements: 1) conduct by the principal that would lead a person to reasonably believe that another person acts on the principal's behalf i.e., conduct by the principal "holding out" that person as its agent; and 2) acceptance of the agent's service by one who reasonably believes it is rendered on behalf of the principal.[3]
Active or explicit misrepresentations of agency by the principal are not required. A principal can manifest assent to a person's action on its behalf by employing an independent contractor and sending that contractor to render performance requested by another without disclosing the relationship. Restatement (Second) of Torts, supra, § 429. And, a principal also may manifest such assent by placing a person in a position from which third parties will infer that the principal assents to acts necessary to fulfill the responsibilities *107 of that position. Restatement (Third) of Agency, supra, § 1.03 comments b, e.
In Arthur, the court found conduct manifesting agency primarily because of the position in which the hospital placed the doctors who misdiagnosed the patient's condition. Courts of other jurisdictions take that approach when a hospital has established and staffed facilities or departments through which patients receive specialized care from medical professionals with whom they do not have a prior or ongoing relationship  emergency rooms, operating rooms and anesthesiology and radiology departments. See Seneris v. Haas, 45 Cal.2d 811, 291 P.2d 915, 927 (1955) (anesthesiologist summoned to plaintiff's room by a nurse); Gilbert v. Sycamore Mun. Hosp., 156 Ill.2d 511, 190 Ill.Dec. 758, 622 N.E.2d 788, 796 (1993) (doctor assigned to emergency room); Sword, supra, 714 N.E.2d at 152 (anesthesiologist provided by the hospital); Paintsville Hosp. Co. v. Rose, 683 S.W.2d 255, 258 (Ky.1985) (member of emergency room staff); Williams v. St. Claire Med. Ctr., 657 S.W.2d 590, 596 (Ky.App.1983) (nurse anesthetist); Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121, 1124 (1977) (staff in operating room); Stratso v. Song, 17 Ohio App.3d 39, 477 N.E.2d 1176, 1185-88 (1984) (anesthesia services); Jennison v. Providence St. Vincent Med. Ctr., 174 Or. App. 219, 25 P.3d 358, 367 (2001) (radiologist); Shepard v. Sisters of Providence, 89 Or.App. 579, 750 P.2d 500, 505 (1988) (surgical resident provided to assist the patient's surgeon). In such situations a patient, who has no choice or reasonable means of soliciting information about the qualifications of such specialists, reasonably assumes the hospital furnishes the care rendered in its facility. Stratso, supra, 477 N.E.2d at 1185.
When a hospital provides such a medical specialist for a patient without taking action to dispel the appearance of authority implied by the specialist's position and action, courts generally treat the hospital's inaction as additional conduct manifesting the hospital's assent to having the specialist care for the patient in its behalf. See Sword, supra, 714 N.E.2d at 152 (considering both the hospital's "actions and inactions" to be relevant); Burless, supra, 601 S.E.2d at 96 (same). The rationale is that "silence" is a "manifestation when, in light of all the circumstances, a reasonable person [in the principal's position] would express dissent to the inference that other persons will draw from silence." Restatement (Third) of Agency, supra, § 1.03 comment b. Courts have relied on inactions such as a hospital's failure to give the patient notice of the specialist's independent status, a disclaimer of responsibility for the specialist's care, or a role in selecting the specialist. See, e.g., Fletcher v. S. Peninsula Hosp., 71 P.3d 833, 842 (Alaska 2003) (concluding that notice of the doctor's independence given on multiple occasions during an extended course of treatment negated any manifestation of apparent authority); Williams, supra, 657 S.W.2d at 596 (noting absence of notice of nurse anesthetist's independence); Mehlman, supra, 378 A.2d at 1124 (noting absence of notice that the hospital's specialized care was "franchised out to various independent contractors"); Hardy v. Brantley, 471 So.2d 358, 371 (Miss.1985) (noting patients generally have no role in selecting anesthesiologists, radiologists or emergency room physicians).
On the foregoing authorities, we hold that when a hospital provides a doctor for its patient and the totality of the circumstances created by the hospital's action and inaction would lead a patient to reasonably believe that the doctor's care is rendered on behalf of the hospital, the *108 hospital has held out that doctor as its agent.[4]
When a hospital provides a doctor for a patient under circumstances in which a reasonable patient would believe the service is rendered in behalf of the hospital, a strong inference arises that a patient who accepts the doctor's care does so in that reasonable belief. See Bing v. Thunig, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3, 8 (N.Y.1957) (noting that a patient who seeks care in a hospital does not expect that its employees "act on their own responsibility"). For that reason, we hold that when a hospital patient accepts a doctor's care under such circumstances, the patient's acceptance in the reasonable belief that the doctor is rendering treatment in behalf of the hospital may be presumed unless rebutted. See Sword, supra, 714 N.E.2d at 152 (adopting a similar rule); Arthur, supra, 169 N.J.Super. at 584, 405 A.2d 443 (noting that when a hospital has held out the doctors, the patient has a right to assume the treatment was rendered on the hospital's behalf in the absence of notice to the contrary).
Based on the cases discussed above, we conclude that the following are among the relevant circumstances that should be considered in their totality when determining whether the hospital's conduct would lead a patient in the same situation to reasonably believe that the doctor acts on the hospital's behalf: whether the hospital supplied the doctor; the nature of the medical care and whether the specialty, like anesthesiology, radiology or emergency care, is typically provided in and an integral part of medical treatment received in a hospital; any notice of the doctor's independence from the hospital or disclaimers of responsibility; the patient's opportunity to reject the care or select a different doctor; the patient's contacts with the doctor prior to the incident at issue; and any special knowledge about the doctor's contractual arrangement with the hospital.
Assessing the adequacy of Christ Hospital's manifestations of authority under the foregoing standards and viewing the facts in the light most favorable to plaintiffs, the evidence was adequate to withstand Christ Hospital's motion for summary judgment on apparent authority. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). By its action in contracting with Hudson to staff its anesthesiology department with doctors for its patients, Christ Hospital put in place a system under which Dr. Zaklama arrived, without explanation, on the day of Cordero's surgery to provide specialized care in the hospital's operating room. The doctor had no prior contact with the patient. The totality of these circumstances would lead a reasonable patient in the same situation to assume that Christ Hospital furnished the services of the anesthesiologist *109 along with those of other members of the operating room staff.
Having created a misimpression of agency, Christ Hospital failed to take any action to correct it. There is no evidence that Christ Hospital issued, or required Dr. Zaklama to issue, any disclaimer of its responsibility and no evidence that Cordero was given an opportunity to reject Dr. Zaklama's services or select a different doctor. Nothing suggests that Cordero had special knowledge about the administration of Christ Hospital or its relationship with Dr. Zaklama.
Under these circumstances, created by Christ Hospital's action and its inaction, a reasonable patient in Cordero's position would have every reason to believe and little reason to doubt that Dr. Zaklama was rendering care in Christ Hospital's behalf. That evidence is sufficient to permit a jury to find that Christ Hospital, by its conduct, held out Dr. Zaklama as its agent.
Because Cordero accepted Dr. Zaklama's care under circumstances that would lead a reasonable patient to believe the care was rendered in behalf of Christ Hospital, plaintiffs are entitled to a rebuttable presumption that Cordero accepted Dr. Zaklama's care in that reasonable belief.

III
Plaintiffs also contend that the trial court erred in granting summary judgment to Christ Hospital on their claim of fraudulent concealment. The pertinent facts are as follows. When Dr. Zaklama was alerted to Cordero's drop in blood pressure and pulse rate, she responded by administering atropine and then epinephrine. Cordero's vital signs continued to weaken and a "code blue" was called. Members of the hospital's code team responded and successfully resuscitated Cordero.
Christ Hospital's policy and procedure manual requires preparation of a "Code Blue Review Sheet." After Cordero's surgery and while she was still hospitalized, a friend of Cordero's daughter reviewed Cordero's chart and noticed that there was no code sheet. When asked about the code sheet, a nurse told Cordero's daughter she would look into it.
After this litigation commenced, plaintiffs asked Christ Hospital to produce "any and all code sheets and/or other code documents." Christ Hospital was unable to locate the code sheet and could not explain why it was not with Cordero's chart. Although Christ Hospital provided plaintiffs with the names of the house physician who responded to the code and the manager of the hospital's medical information department, plaintiffs did not depose them.
In order to prevail on their claim of fraudulent concealment, plaintiffs must establish each of the following elements:
(1) That defendant ... had a legal obligation to disclose evidence in connection with an existing or pending litigation;
(2) That the evidence was material to the litigation;
(3) That plaintiff could not reasonably have obtained access to the evidence from another source;
(4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;
(5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.
[Rosenblit v. Zimmerman, 166 N.J. 391, 406-07, 766 A.2d 749 (2001).]
It is clear that plaintiffs cannot establish one of the essential elements of fraudulent *110 concealment. Because plaintiffs did not depose a member of the code team who was available, they cannot demonstrate that they "could not reasonably have obtained access to the evidence from another source." Id. at 407, 766 A.2d 749. On that basis alone, the grant of summary judgment was appropriate.
Affirmed in part; reversed in part and remanded for further proceedings.
NOTES
[1] Other courts have employed different labels and theories in addressing the vicarious liability of hospitals. See Sword v. NKC Hosps., Inc., 714 N.E.2d 142, 148-51 (Ind.1999) (discussing cases using the terms "apparent agency," "ostensible agency" and "agency by estoppel").
[2] In Basil, the Court concluded that the standard for imputing liability in the hospital setting should not be applied to assess the "apparent authority" of doctors employed by a workers' compensation insurance carrier. In that context, the Court held that the plaintiff "would have to show both that the insurer . . . conveyed and intended to convey that [the doctor] was its treating physician for [the employee], and that [the employee] acted in reliance on such a reasonable, but falsely created, impression...." Ibid.
[3] There is a notable difference between sections 2.03 and 429 and the standard for apparent authority provided in section 267 of the Restatement (Second) of Agency (1958), which includes an element of reliance. Reliance is an element of apparent authority under sections 2.03 and 429 only to the extent that it is subsumed in the requirement that the person accepting an agent's services do so in the "reasonable belief" that the service is rendered in behalf of the principal.

The elements of agency by estoppel also differ from the elements of apparent authority stated in sections 2.03 and 429. Agency by estoppel requires proof of detrimental reliance. Restatement (Third) of Agency, supra, § 2.05 introductory note.
[4] The reasonableness of a patient's belief should be measured from the perspective of a patient of ordinary prudence and understanding of the hospital's procedures. A different measure of reasonableness, "a person of ordinary prudence, conversant with business usages and the nature of the particular business," is referenced in Arthur and quoted in Basil. Basil, supra, 193 N.J. at 67, 935 A.2d 1154; Arthur, supra, 169 N.J.Super. at 580, 405 A.2d 443. But, the Arthur court assessed the reasonableness of the patient's belief by considering what ordinary patients would know about the status of the members of the emergency room staff. Arthur, supra, 169 N.J.Super. at 583, 405 A.2d 443. Any evidence that the patient was or should have been aware of the doctor's independence from the hospital would be relevant to rebut an inference of the patient's acceptance of the medical service in the reasonable belief that the doctor was providing care on behalf of the hospital.