**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3313-15T3

TARA NOVEMBRE and ANIELLO
NOVEMBRE,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

NEW JERSEY NETS, NEW JERSEY
SPORTS EXPOSITION AUTHORITY,
JAMES LOCKWOOD, ESQUIRE, and
CHUBB SERVICES CORPORATION,[1]

      Defendants-Respondents/
      Cross-Appellants.

_____

Argued October 3, 2018 – Decided July 18, 2019

Before Judges Koblitz, Ostrer and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0568-12.

---

[1] We have corrected the caption of the trial court's order to reflect the addition of defendant Chubb Services Corporation in the amended complaint.

Angela M. Roper argued the cause for appellants/cross-respondents (Roper & Thyne, LLC, attorneys; Kenneth S. Thyne, on the briefs).

William J. Riina argued the cause for respondent/cross-appellant New Jersey Basketball, LLC[2] (Wilson Elser Moskowitz Edelman & Dicker LLP, attorneys; William J. Riina, of counsel and on the briefs; Robert C. Neff, on the briefs).

Kevin R. Reich argued the cause for respondents/cross-appellants New Jersey Sports and Exposition Authority and James Lockwood (Paul J. Soderman and Gibbons PC, attorneys; Frederick William Alworth and Kevin R. Reich, on the briefs).

Patrick A. Robinson argued the cause for respondent/cross-appellant Chubb Services Corporation (Robinson Burns Diantonio, attorneys; Patrick A. Robinson, of counsel and on the briefs; Anthony Vincent Di Antonio, Colin R. Gibson, and Lucas W. Morgan, on the briefs).

PER CURIAM

Plaintiffs Tara and Aniello Novembre appeal from the trial court's March 3, 2016 order granting summary judgment and dismissing their fraudulent concealment claim against defendants: The New Jersey Sports and Exposition Authority (the Authority), then-Authority-attorney James Lockwood, New Jersey Basketball LLC (the Nets), and Chubb Services Corporation (Chubb). Plaintiffs also appeal from trial court orders in June and July 2015 denying their

---

[2] New Jersey Basketball, LLC, improperly pleaded as New Jersey Nets.

motions for leave to file a second amended complaint and for reconsideration.[3] Defendants filed protective cross-appeals.

Reviewing Judge James J. DeLuca's order de novo, applying the same summary judgment standard as he did, see Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (describing standard of review), we conclude the evidence does not present "sufficient disagreement to require submission to a jury" and "it is so one-sided that [defendants] must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 533 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). Also, deferring to Judge DeLuca's exercise of discretion, see Franklin Med. Assocs. v. Newark Pub. Sch., 362 N.J. Super. 494, 506 (App. Div. 2003), we affirm the denial of the motion to amend and for reconsideration. We dismiss the cross-appeals as moot.

Plaintiffs filed their fraudulent concealment action the same day we affirmed the no cause judgment in their personal injury action against the Authority and Snyder High School (Snyder High). See Novembre v. Snyder

_____

[3] Although plaintiffs identified other orders in their notice of appeal, they do not address them in their brief on the merits; we therefore consider them waived. See Liebling v. Garden State Indem., 337 N.J. Super. 447, 465-66 (App. Div. 2001) (stating that "an issue not briefed . . . is deemed waived").

<u>High School</u>, No. A-3426-09 (App. Div. January 17, 2012).  We presume the reader's familiarity with our prior opinion.  In sum, plaintiffs alleged in their prior action that, while attending a New Jersey Nets game at the Meadowlands, Tara[4] was injured when a member of a Snyder High student group fell onto her from the next row up.  Plaintiffs alleged that the Authority and Snyder High negligently supervised the Snyder High students, who were rowdy and ill-behaved.  The trial court excluded the hearsay statement "Why did you push her?" from an unidentified declarant, which suggested a person pushed the spectator onto Tara.  Plaintiffs lacked other proof of what propelled the spectator – whether another person purposely pushed her, someone accidentally jostled her, or she simply lost her footing on her own.

In the present action, plaintiffs alleged that defendants concealed for roughly seven months the name of the high school whose students were seated behind them.  In April 2005, in response to her request for the identity of the student group seated behind Tara, the Authority – Lockwood in particular – referred plaintiffs' attorney to the Nets.  In turn, the Nets referred the attorney to its insurer, Chubb.  A Chubb claims examiner assured the attorney he would

---

[4]  As plaintiffs share a surname, we refer to Tara Novembre by her first name for convenience and with no disrespect intended.

notify her of the information when he received it. In early May 2005, the claims examiner received the information, along with a number of other records. He put the documents in a file and intended to review them later, but he never did. He did not inform the plaintiffs' attorney either. The claims examiner was then transferred to a different position shortly after receiving the files. When plaintiffs' attorney followed up in November 2005, she was referred to the claims examiner's successor, who looked through the file and promptly disclosed that a Snyder High student group was seated behind plaintiffs.

The following month, plaintiffs sought permission to serve a late Tort Claims Act notice upon Snyder High, which the court granted in early 2006. However, plaintiffs did not file suit until January 2007, nor did they immediately seek discovery from Snyder High. In 2009, Snyder High disclosed that it could not locate the field trip file that would have contained permission slips identifying the students who attended the game.

Plaintiffs allege that the delay from April to November 2005 in disclosing Snyder High prevented them from discovering the identity of the student who landed on Tara, and how she was propelled into the next row. Plaintiffs allege that such evidence would have established proximate causation in her prior action.

A-3313-15T3

After a lengthy period of discovery, significant motion practice, and a remand following an interlocutory appeal, Judge DeLuca granted defendants summary judgment, concluding, in a thorough written opinion, that plaintiffs would be unable to prove by clear and convincing evidence, see Fox v. Mercedes-Benz Credit Corp., 281 N.J. Super. 476, 484 (App. Div. 1995) (establishing standard of proof for fraud claims), all five elements of a fraudulent concealment claim:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;
>
> (2) That the evidence was material to the litigation;
>
> (3) That plaintiff could not reasonably have obtained access to the evidence from another source;
>
> (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;
>
> (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.
>
> [Rosenblit v. Zimmerman, 166 N.J. 391, 406-07 (2001).]

A-3313-15T3

In the trial court's view, plaintiffs satisfied some elements against some defendants, but they did not, as required, satisfy all five elements against any defendant.

On appeal, plaintiffs contend they satisfied all five elements. We disagree, and affirm summary judgment.

Although we do not address the Rosenblit elements in numerical order, we begin with the first, pertaining to duty. Plaintiffs provide no precedential authority for the proposition that likely defendants in a prospective lawsuit – such as the Authority or the Nets or their agent – have a duty to disclose evidence to a prospective plaintiff, to assist her in developing her claim against them, before she files suit. Whether such a duty existed is a legal question for the court, determined in light of public policy considerations, based in part on the relationship of the parties. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) (reviewing factors governing whether to recognize a duty of care).

The parties' likely adversarial relationship tends not to support imposition of a duty. Furthermore, the design of our discovery rules reflects the policy that post-filing discovery is broad, but pre-suit discovery is circumscribed. In particular, a party may not utilize Rule 4:11-1, allowing limited pre-suit discovery, solely to identify potentially liable defendants. See In re Petition of

7

<u>Hall</u>, 147 N.J. 379, 391 (1997) (holding that the Rule "was not intended to authorize pre-suit discovery for the sole purpose of assisting a prospective plaintiff in acquiring facts necessary to frame a complaint").  It would be inconsistent with the "holistic and comprehensive system" of discovery set forth in our Rules, <u>see</u> <u>Johnson v. Grayce Tighe, Inc.</u>, 365 N.J. Super. 237, 240 (App. Div. 2003), to impose on the Nets, the Authority, or its attorney, a pre-suit duty outside the Rules to disclose as plaintiffs contend.

Chubb challenges Judge DeLuca's finding that the insurer voluntarily assumed a duty to disclose the identity of the high school whose students were seated behind plaintiffs.[5]  However, we need not address this point, as we are persuaded that plaintiffs could not prove, by clear and convincing evidence, that the Nets's insurer intentionally withheld the identity of the high school group – the fourth <u>Rosenblit</u> element.  We recognize that matters of intention are

---

[5] Chubb does not address plaintiffs' argument that its duty to disclose arose out of its obligations under the Unfair Claims Settlement Practices Act (the Act) and implementing regulations, in particular, N.J.S.A. 17:29B-4(9)(b) and N.J.A.C. 11:2-17.6, which makes it an unfair claims settlement practice to fail to promptly respond to communications regarding claims.  However, because the Act does not create a private right of action, <u>Pierzga v. Ohio Cas. Grp. of Ins. Cos.</u>, 208 N.J. Super. 40, 47 (App. Div. 1986), it is questionable whether it would be appropriate to derive a duty from the Act, actionable in a private fraudulent concealment claim.

generally not susceptible to summary judgment. See Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245, 271-72 (2004). However, where there is no genuine issue of material fact, particularly in view of the standard of proof and the one-sidedness of the evidence, summary judgment is appropriate. See Fielder v. Stonack, 141 N.J. 101, 127 (1995) (stating a state of mind question "does not preclude summary judgment, but requires the most careful analysis before granting it"); Allis-Chalmers Corp. Prod. Liab. Trust v. Liberty Mut. Ins. Co., 305 N.J. Super. 550, 556-57 (App. Div. 1997) (affirming summary judgment dismissal of fraudulent concealment action, concluding that evidence did not support a finding of intentional destruction).

Here, the evidence indicates that the claims examiner's failure to impart information to plaintiffs' attorney was an unintentional oversight. He put the information in a file, to review later, but he never did. Neither the claims examiner nor Chubb had any self-interest in withholding information about a potentially liable party other than its insured, the Nets. However, the Nets were dismissed from the prior action because it had no control over fan behavior. No reasonable jury would find, particularly by clear and convincing evidence, that Chubb intentionally withheld Snyder High's identity to impede plaintiffs' lawsuit. For the same reason, no reasonable jury would find that the Nets, even

if the team had a duty to disclose, intentionally withheld the identity of the school group.

Plaintiffs also fail to present a genuine issue of material fact that the Authority intentionally withheld the name of the high school. Had the Authority intended to delay or impede plaintiffs' pre-trial investigation, it would not have referred plaintiffs' counsel to the Nets, which had access to the information and no incentive to withhold it. The Authority would have had no reason to believe that its referral to the Nets would have delayed plaintiffs' discovery of the high school, as opposed to hastening it.

Returning to the second element, we assume for argument's sake that the name of the high school, and the identity of the student who fell on Tara and of the students standing nearby, were material to the litigation. Testimony from the student who fell, and the witnesses who observed her, could have affected the outcome of the litigation. See Liberty Lobby, 477 U.S. at 248 (describing "genuine issues as to material facts" as "disputes over facts that might affect the outcome of the suit under the governing law"); Mellet v. Aquasid, LLC, 452 N.J. Super. 23, 27 (App. Div. 2017) (stating "[a] fact is material if it is substantial in nature"). However, it is pure speculation that the testimony of such witnesses would have favored plaintiffs. The girl who fell on Tara may have testified that

she fell accidentally. If called as a trial witness, the person who asked, "Why did you push her?" may have testified that he just assumed the girl was pushed; or he may have testified that he posed the question in jest, to put another student on the spot. In other words, it is not evident that the testimony sought by plaintiffs, even if material, would have benefited their case.

We turn to the third Rosenblit element. Focusing on the name of the high school, plaintiffs contend they could not reasonably have obtained access to the evidence from a source other than defendants. However, the defendants must be treated individually. With respect to their claim against the Authority, plaintiffs could and did obtain access to the high school's name from a source other than the Authority; plaintiffs obtained the information from the insurer of the Nets, which gave the tickets to Snyder High in the first place.

Furthermore, the crux of plaintiffs' complaint is that the delayed disclosure of Snyder High prevented them from discovering the student who fell and the students who witnessed the fall. Although it obviously would have been easier to discover the names by obtaining the field trip file – if it was then extant and accessible – plaintiffs could have demanded that the high school leadership canvass all students, to ask them whether they attended the game and whether

11

they remembered anyone else who did.[6] That may have enabled plaintiffs to reconstruct a list of students who attended the game. To establish that the evidence could not be obtained from another source, plaintiffs were obliged to pursue reasonable alternative means of discovery. See Estate of Cordero v. Christ Hosp., 403 N.J. Super. 306, 320-21 (App. Div. 2008) (affirming summary judgment dismissal of claim that hospital fraudulently concealed a "code sheet," where plaintiffs did not depose a member of the code team to secure the desired evidence).

Finally, as for the fifth element, plaintiffs failed to present sufficient evidence that they were damaged in the prior personal injury suit "by having to rely on an evidential record that did not contain the evidence defendant concealed." Rosenblit, 166 N.J. at 407. As noted, long before plaintiffs even filed their initial personal injury complaint, they had the information they claim was concealed – the name of the high school. They claim they were ultimately damaged at trial because they did not have the names of the particular Snyder

---

[6] We recognize that by the time plaintiffs identified Snyder High, one class of students had graduated. But, students still attending Snyder High would likely recall some of their upper-classmates who were at the Nets game.

High student who fell and those who saw her fall, including the person who allegedly said, "Why did you push her?"

Plaintiffs contend that by delaying disclosure of Snyder High, defendants impeded plaintiffs from identifying the students. Thus, in order for plaintiffs to prevail on the fifth <u>Rosenblit</u> element, the element must be revised to provide: "plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain <u>evidence that plaintiff would have discovered but for the</u> evidence defendant concealed."

Even applying this revised element, plaintiffs have not established that the delayed disclosure of the high school's name prevented them from identifying the student who fell and the students who witnessed the fall. It is mere speculation that plaintiffs could have discovered the field trip file had one of the defendants disclosed Snyder High in the Spring of 2005. The field trip file was lost or destroyed, but there is no clear and convincing evidence showing when that happened. Conceivably, the file was misplaced immediately after the game, in which case, the delay in disclosing the high school was inconsequential. Alternatively, the file may have been available until at least the end of 2006. According to Ellen Ruane, who was Snyder High's principal until December 31, 2006, field trip files remained in her office, and were not destroyed, throughout

13

her tenure.  Thus, plaintiffs may have had almost a year to discover the file had it commenced the personal injury action after it received leave to file a late Tort Claims Act notice.  We recognize that the high school's attorney in the prior action gave conflicting statements that the field trip file would have been kept only until the end of the 2005 school year.  However, that attorney lacked personal knowledge of the contents of the high school's files.

Plaintiffs also misunderstand the nature of damages recoverable in their fraudulent concealment action.  They apparently seek to argue to a jury that defendants' alleged concealment caused Tara "to lose her personal injury action" and, presumably, plaintiffs seek recovery of the personal injury damages she sought in the prior act.  However, based on their discovery that the field trip file was lost or missing, plaintiffs timely requested and were granted an adverse inference charge.  The Supreme Court has called an adverse inference charge a "complete substantive remedy" for the impact of the alleged concealment on the substantive claim.

> In the context of a claim of spoliation by a defendant, the use of an adverse inference should create a complete substantive remedy because the jury will decide, as part of the case in chief, whether the missing evidence existed and was destroyed by defendant.  If so, the jury will decide the substantive issue as if that evidence assisted the plaintiff.

[Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 120 (2008).]

If the adverse inference charge is delivered, then the plaintiff in the fraudulent concealment action may seek "additional compensatory damages limited to the further costs of proceeding with the spoliated evidence, or costs incurred in an effort to replace that evidence, together with, if appropriate a punitive award." Ibid. Plaintiffs have presented no argument for such compensatory damages.

In sum, we are convinced that summary judgment was properly granted, as plaintiffs have failed to present sufficient evidence to create a jury question as to all five Rosenblit elements regarding any defendant.

We shall not comment at length regarding plaintiffs' appeal from the trial court's order denying their motion for leave to file a second amended complaint. As noted above, our review is deferential. Franklin Med Assocs., 362 N.J. Super. at 506. We discern no clear abuse of discretion in Judge DeLuca's order, and affirm substantially for the reasons set forth in his cogent written opinion denying the motion for leave to amend.

Given our disposition of plaintiffs' appeal, the protective cross-appeals are dismissed as moot. See Boardwalk Regency Corp. v. Square Brighton Corp., Inc., 288 N.J. Super. 494, 504 (App. Div. 1996) ("The summary judgments

entered . . . in the consolidated actions under appeal are affirmed. Therefore, the cross-appeal is moot.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION