**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0111-23

ASHLEY SMITH General
Administrator and Administrator
Ad Prosequendum, of the
ESTATE OF JOSHUA
SMITH, JR., Deceased, and
JOSHUA SMITH, SR.,

      Plaintiffs-Appellants,

v.

ANNETTE NIEVES, LRN,
PREFERRED HOME HEALTH
CARE AND NURSING SERVICES,

      Defendants-Respondents.

_____

         Submitted October 22, 2024 – Decided November 20, 2024

         Before Judges Smith and Vanek.

         On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0805-21.

         Hunt Hamlin & Ridley, attorneys for appellants (Ronald C. Hunt, of counsel and on the briefs).

Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys for respondents (Joseph R. Lang, on the brief).

PER CURIAM

Plaintiffs, Ashley Smith, administrator of the Estate of Joshua Smith, Jr., and Joshua Smith, Sr.,[1] appeal a series of pretrial orders and an August 4, 2023 order granting summary judgment entered in this medical malpractice action against defendants Annette Nieves, LPN, (Nieves) and Preferred Home Health Care and Nursing Services (Preferred).[2] After a thorough review of the record and application of prevailing law, we affirm all orders on appeal.

## I.

The summary judgment motion record, construed in the light most favorable to plaintiffs, as required under our jurisprudence, establishes the following salient facts. See Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Plaintiffs filed a medical malpractice action alleging defendants departed from the accepted standards of

---

[1] Because the parties share the same surname, we refer to the parties by first names for clarity and intend no disrespect in doing so. We refer to both parents collectively as plaintiffs.

[2] Nieves and Preferred are collectively referred to as defendants.

A-0111-23

nursing care resulting in the death of their infant son, Joshua Smith, Jr.[3] The infant was diagnosed at his premature birth with bronchopulmonary dysplasia, along with several other illnesses. The infant relied on a respirator to breathe, with his oxygen being monitored via a pulse oximeter clipped to his foot.

Plaintiffs retained Preferred to provide the infant with in-home nursing care sixteen hours a day in two eight-hour shifts, once he was sent home from the hospital. The infant's care plan identified several safety measures, including the requirement that the pulse oximeter alarm was not to be silenced.

Plaintiffs allege that on March 10, 2019, defendant Nieves deactivated and then removed the pulse oximeter alarm while she was interacting with the infant, failing to timely reattach the alarm. Shortly after the pulse oximeter was placed back on the infant, he became unresponsive and died. Plaintiffs allege Nieves failed to provide proper resuscitative care and timely call for emergency services.

The next day, representatives from Preferred, Jessica Cedeno, R.N., and Jennifer Molina, R.N., met with Joshua to review a video in his possession of Nieves's care of the infant on March 10, prior to the arrival of emergency

---

[3] Since Joshua Smith, Jr. and Joshua Smith, Sr. have the same first name, we refer to Joshua Smith, Jr. as "the infant," and intend no disrespect in doing so.

A-0111-23

services. According to Joshua, Cedeno and Molina admitted to him that Nieves breached the standard of care governing nurses in that Nieves didn't do "anything she was supposed to do" and "did not act with a sense of urgency." Plaintiffs assert they texted a copy of the video to Cedeno to review with Nieves on March 11, 2019.

On March 8, 2021, plaintiffs filed this lawsuit and the parties proceeded with discovery. On January 25, 2023, defendants moved to extend discovery and the trial court denied it because defendants failed to show exceptional circumstances. After reconsideration, the trial court entered an order extending discovery for ninety days and permitting plaintiffs to file a motion to compel outstanding discovery.

Plaintiffs state that in late March 2023, they received a recording of the March 11, 2019 meeting with the Preferred employees from one of their relatives who attended. Plaintiffs amended their interrogatories on April 3, 2023, to provide defendants with the recording and requested that Preferred supply the names and titles of the employees in attendance. On April 20, 2023, plaintiffs amended their discovery responses to include a transcript of that recording and the infant's medical records.

On June 16, 2023, defendants amended their discovery responses to include the names of the meeting attendees, coupled with a response to plaintiffs' other requests for discovery posed in the April 3 letter. Defendants' amendment was not accompanied by a certification of due diligence that the discovery could not have been secured at least twenty days prior to the June 26, 2023 discovery end date as required under Rule 4:17-7.

That same day, defendants filed a motion to bar plaintiffs' expert reports and for an order granting summary judgment. Shortly afterwards, plaintiffs filed a motion to: bar defendants' expert reports; amend the complaint to include a claim for fraudulent concealment; and impose discovery sanctions and costs. Plaintiffs' putative fraudulent concealment claim was based on the assertion that defendants did not identify the March 11, 2019 meeting or its attendees in answers to interrogatories until the end of discovery and failed to properly document the infant's medical record pursuant to the Patient Safety Act (PSA), N.J.S.A. 26:2H-1 to 26, to reference any internal reports or meetings of an "adverse event."[4] Plaintiffs sought sanctions against defendants for their late

---

[4] The PSA was enacted to improve patient safety in any hospital and health care facility by creating a medical error reporting system. The PSA defines "health care facility" as those "licensed pursuant to PL.1971, c.136 and a State psychiatric hospital operated by the Department of Human Services . . . ."

amendment since it was not accompanied by a <u>Rule</u> 4:17-7 certification, including a request to bar defendants' expert reports as a sanction. Plaintiffs also requested that defendants' experts be barred because they purportedly considered inaccurate facts.

The 775-day extended discovery period ultimately expired on June 26, 2023. On July 14, the trial court denied plaintiffs' motion to bar, to amend the complaint, and to impose sanctions, providing a written statement of reasons accompanying the order. On August 4, plaintiffs' motion for reconsideration of the July 14 order was denied.

On the same date, the trial court granted defendants' motion to bar plaintiffs' expert reports and for summary judgment, with a written statement of reasons accompanying the order. The trial court's grant of summary judgment was predicated on plaintiffs' failure to serve an expert report from a qualified physician causally relating Nieves's conduct to the infant's death.

This appeal followed.

II.

---

N.J.S.A. 26:2H-12.25. Plaintiffs have not established that Preferred is governed by the PSA.

We find no abuse of discretion in the trial court's denial of plaintiffs' motion to amend the complaint to assert a fraudulent concealment cause of action, and the omission of the following in their initial responses to interrogatories: (1) reference to the March 10 video regarding Nieves's care of the infant; and (2) Nieves's statements to others about the care that was provided on March 10.

Since a motion seeking leave to amend a complaint under Rule 4:9-1 rests in the court's sound discretion, Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006), we review a trial court's determination for abuse of that discretion. Port Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014). The trial court's "exercise of discretion requires a two-step process [to evaluate]: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte, 185 N.J. at 501. "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks omitted)).

Pursuant to Rule 4:9-1, "[a] party may amend any pleading as a matter of course at any time before a responsive pleading is served . . . [t]hereafter a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice." A motion for leave to amend a complaint is governed by the same standard as a motion to dismiss under Rule 4:6-2(e). Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 257 (App. Div. 1997). That is, if the proposed amendment to a complaint does not state a cause of action or asserts a claim that "is not sustainable as a matter of law," a court should deny the motion to amend. Id. at 257.

To state a claim for fraudulent concealment, a plaintiff must establish:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;
>
> (2) That the evidence was material to the litigation;
>
> (3) That plaintiff could not reasonably have obtained access to the evidence from another source;
>
> (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;
>
> (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

A-0111-23

[Rosenblit v. Zimmerman, 166 N.J. 391, 406-07 (2001).]

We discern no abuse of discretion by the trial court in denying plaintiffs' motion for leave to amend to include a claim for fraudulent concealment because the amendment would be futile, as plaintiffs cannot prevail on this cause of action as a matter of law for several reasons. Plaintiffs were in possession of the March 10 video, and therefore, the recording could not have been fraudulently concealed.

Plaintiffs also have not established that Nieves's statements and the names of the Preferred employees in attendance at the meeting with Joshua could not have been discovered through diligent efforts. Est. of Cordero v. Christ. Hosp., 403 N.J. Super. 306, 321 (App. Div. 2008) (holding an action will not lie if plaintiff failed to depose a witness who was in possession of the required information). The record establishes that plaintiffs did not depose any of Preferred's employees, including Nieves, Cedeno, and Molina, to inquire about Nieves's actions on March 10, and the March 11 meeting. Plaintiffs have not cited any case law recognizing a fraudulent concealment claim under these circumstances.

We reject plaintiffs' conclusion that Preferred concealed information or documents regarding any meetings held without asserting privilege under the

PSA. Plaintiffs have not shown that Preferred falls within the purview of the PSA.

Faced with these undisputed facts, we conclude the trial court did not abuse its discretion in denying plaintiffs leave to amend the complaint to state a fraudulent concealment cause of action, more than two years after the filing of this litigation.

III.

We conclude the trial court's order denying plaintiffs' motion for sanctions against defendants for serving late interrogatory responses was not an abuse of discretion. Therefore, we affirm that portion of the July 14, order.

"An appellate court applies 'an abuse of discretion standard to decisions made by [the] trial courts relating to matters of discovery.'" Hollywood Café Diner, Inc. v. Jaffee, 473 N.J. Super. 210, 216 (App. Div. 2022) (quoting C.A. by Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (alteration in original)). "It 'generally defer[s] to a trial court's disposition of discovery matters unless the court has abused its discretion[,] or its determination is based on a mistaken understanding of the applicable law.'" Ibid. (quoting C.A., 219 N.J. at 459 (alterations in original)).

10

Rule 4:17-7 permits amended answers to interrogatories up to twenty days before the discovery end date fixed by the track assignment or court order. Thereafter, any amendments must be accompanied by a certification that the information was not reasonably available to be served prior to the discovery end date through the exercise of due diligence. R. 4:17-7. A valid certification of due diligence must provide a "precise explanation that details the cause of delay and what actions were taken during the elapsed time . . . ." Bender v. Adelson, 187 N.J. 411, 429 (2006).

The rule further provides that, "[i]n the absence of said certification, the late amendment shall be disregarded by the court and adverse parties." R. 4:17-7. Thus, the rule itself establishes a sanction by requiring a trial court to disregard a late amendment to interrogatories where the party does not provide the required certificate of due diligence.

We affirm the trial court's July 14 order denying plaintiffs' motion seeking sanctions for serving late discovery responses without an accompanying Rule 4:17-7 certification. In this case, it is undisputed that defendants served plaintiffs with amended answers to interrogatories on June 16, 2023, ten days before the June 26, discovery end date. Because the amended answers were served within twenty days of the discovery end date, Rule 4:17-7 required

11

defendants' amended answers to be accompanied by a certificate of due diligence. Since it is undisputed defendants failed to provide the required certification, defendants' June 16, amendment was a nullity.

Because defendants were sanctioned by operation of Rule 4:17-7, we conclude the trial court did not abuse its discretion in denying plaintiffs' request for further sanctions related to this issue.

IV.

On de novo review, we affirm the trial court's grant of summary judgment to defendants predicated on plaintiffs' failure to establish a prima facie case of causation through competent medical proofs.

A grant of summary judgment is appropriate if "there is no genuine issue as to any material fact" and the moving party is entitled to judgment "as a matter of law." R. 4:46-2(c). We consider, as did the trial court, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

"To prove medical malpractice . . . 'a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury.'" Haviland v. Lourdes Med. Ctr. of Burlington Cty., Inc., 250 N.J. 368, 384 (2022) (quoting Nicholas v. Mynster, 213 N.J. 463, 478 (2013)). "A jury question as to defendant's liability is not presented simply by the introduction of some evidence of negligence. There must be evidence or reasonable inferences therefrom showing a proximate causal relation between defendant's negligence, if found by the jury, and the injury . . . ." Germann v. Matriss, 55 N.J. 193, 205 (1970) (citing Swanson v. Wiesenfeld, 24 N.J. Super. 576, 588-90 (App. Div. 1953)).

We discern no error with the trial court's grant of summary judgment in favor of defendants, based on the absence of proffered medical expert testimony as to causation. The trial court found plaintiffs "[had] not raised a genuine issue of material fact as to the claim for medical malpractice, due to [] only submitting a nurse's expert report and not providing an expert report" by a medical doctor correlating the infant's death to the nursing malpractice. Absent a properly qualified physician's opinion causally relating Nieves's actions with the infant's

death, the trial court concluded plaintiffs failed to raise a genuine issue of material fact and dismissed plaintiffs' complaint with prejudice.

Plaintiffs have not presented any expert report establishing that any physician will appear at trial to testify on the issue of causation. Plaintiffs' nursing expert, Diane E. Meehan, is not qualified to provide expert testimony on proximate causation because she is not a physician.

Well settled law establishes that Meehan, as a registered nurse, is not qualified to opine on the issue of proximate causation. N.J.S.A. 45:11-23(b) defines the practice of nursing as "diagnosing and treating human responses to actual or potential physical and emotional health problems . . . ." The statute recognizes that the diagnostic privilege in the context of nursing practice "is distinct from a medical diagnosis." Ibid. "A nursing diagnosis identifies signs and symptoms only to the extent necessary to carry out the nursing regimen rather than making final conclusions about the identity and cause of the underlying disease." State v. One Marlin Rifle, 30/30, 30 AS, Serial No. 12027068, 319 N.J. Super. 359, 369 (App. Div. 1999).

Plaintiffs posit that the infant's treating physician, Dr. Howard Britt, can testify on the issue of proximate causation, citing to Stigliano v. Connaught Laboratories, Inc., 140 N.J. 305 (1995). In Stigliano, the Court determined

"[b]ecause the determination of the cause of a patient's illness is an essential part of diagnosis and treatment, a treating physician may testify about the cause of a patient's disease or injury." Id. at 314. Unlike in Stigliano, Dr. Britt did not directly treat, evaluate, or diagnose the infant on March 10. While Dr. Britt may have provided orders to Preferred and their nursing personnel, such that he was a treating physician prior to the death, he did not issue any order or evaluate the infant on March 10 and, as a result, cannot opine as to whether Nieves's actions were the proximate cause of the infant's death.

Even if Dr. Britt had been considered a treating physician on March 10, he cannot testify at trial because plaintiffs did not serve defendants with an expert report containing his opinion on causation. "Rules 4:17-4(a), (e) and [Rule] 4:10-2(d)(1), compel the service of reports by treating physicians who will testify at trial, in the event that those reports are requested in discovery." Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 582 (2016). Defendants requested any and all expert reports from plaintiffs during discovery through an interrogatory and a notice to produce documents regarding treating physicians. Plaintiffs never served an expert report from Dr. Britt.

We are unpersuaded by plaintiffs' argument that the trial court erred in granting defendants' motion for summary judgment because discovery from

15

defendants remained outstanding. Although plaintiffs assert generally that summaries from Cedeno and Molina remain outstanding, as well as several emails allegedly in defendants' possession, no specific outstanding discovery was identified as potentially creating an issue of material fact on plaintiffs' failure to meet its burden of establishing causation. Tucci v. Tropicana Casino and Resort, Inc., 364 N.J. Super. 48, 52-53 (App. Div. 2003); Lauder v. Teaneck Volunteer Ambulance Corps, 368 N.J. Super. 320, 332-33 (App. Div. 2004).

There is also no evidence in the record to support plaintiffs' assertion they filed a motion to compel or to extend discovery, after the entry of the March 17, 2023 order. Absent a formal motion by plaintiffs seeking a further discovery extension or to enforce defendants' discovery obligations, we need not address plaintiffs' arguments. Plaintiffs simply have not established there was any specific, material outstanding discovery precluding summary judgment. Thus, we affirm.

V.

Plaintiffs do not substantively address their appeal of the trial court's order denying reconsideration, nor do they procedurally analyze the motion under the appropriate standard. Instead, they merely reiterate their earlier arguments as to why the trial court erred in denying their motions.

Our affirmance of the summary judgment order moots plaintiffs' appeal of the trial court's denial of their motions for reconsideration and to bar defendants' expert reports as net opinion.  Redd v. Bowman, 223 N.J. 87, 104 (2015) (internal quotation omitted) (finding "[a]n issue is moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy"); De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (holding "[a] case is technically moot when the [] issue presented has been resolved, at least concerning the parties who initiated the litigation"); In re City of Plainfield's Park-Madison Site, 372 N.J. Super. 544, 550 (App. Div. 2004), certif. denied, 182 N.J. 630 (2005) ("Issues that have been rendered moot by subsequent developments render legal issues abstract and outside the proper realm of courts.").

To the extent we have not addressed any of plaintiffs' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0111-23